United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br>KATHERINE MOGAL,<br><div align="center">Defendant.</div> | Case No. 18-cr-00259-BLF-1<br><br>**ORDER DENYING MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT MOGAL**<br><br>[Re: ECF 23] |

Before the Court is the government's motion to disqualify Randall Luskey and Orrick, Herrington & Sutcliffe, L.L.P. (collectively, "Orrick") as counsel for Defendant Katherine Mogal ("Mogal") in this criminal action. ECF 23. Though Orrick represents only Ms. Mogal in the present action, Orrick jointly represented each of the six Defendants in a prior state court action and an International Trade Commission action based on the same or substantially similar activity as is at issue in the present criminal action. For the reasons discussed below and as stated on the record at the September 18, 2018 hearing on the motion, the motion is DENIED.

## I. BACKGROUND

The history of the present action begins in 2014. Between March 2014 and April 2015, each of the Defendants—Katherine Mogal, Ana Rosario, Patrick Narron, Patricio Romano, Rong "Audrey" Zhang, and Jing Qui "Gee" Weiden—resigned from AliphCom, Inc. (d/b/a "Jawbone"), a wearable electronic device manufacturer, and began employment with Fitbit, Inc. ("Fitbit"). Indictment ¶¶ 3–8, ECF 1. In May of 2015, Jawbone sued each Defendant and Fitbit for misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, in a civil action brought in California Superior Court, County of San Francisco. *See Aliphcom, Inc. v. Fitbit*, No.

CGC-15-546004.  Fitbit and the Defendants retained Orrick in May 2015[1] to represent them in the state court action.  Thompson Decl. ISO Opp. to Mot. to Disqualify ¶ 7, ECF 29-3.  Orrick obtained conflict waivers from each of the Defendants in their initial engagement letters, executed in June 2015.[2]  *See* Thompson Decl., Exs. L–Q.  The case settled in December 2017.  *See* Rooney Decl. ISO Mot. to Disqualify ¶ 2, ECF 23-1.

In July 2015, Jawbone filed a complaint with the International Trade Commission against Fitbit, alleging nearly identical trade secret claims as those raised in the state court action.  *See In the Matter of Certain Activity Tracking Devices, Systems, and Components Thereof*, Investigation No. 3075; Thompson Decl. ¶ 9, Ex. H.  The law firm of Gibson, Dunn & Crutcher LLP represented Fitbit in the ITC action, and Orrick represented each Defendant except Weiden as witnesses.  Thompson Decl. ¶ 10.  The action was heard in May 2016.  Each Defendant testified that he or she was innocent of wrongdoing, and none of the Defendants made any inculpatory statements against any other Defendant.  *Id.* ¶ 12.  In October 2016, the ITC decision was finalized, finding no evidence that Fitbit had misappropriated trade secrets.  *See id.*, Exs. I & J.

In August 2016, Orrick learned that the government had embarked on a criminal investigation related to these events and informed the government that it represented each Defendant.  *See id.* ¶ 15, Ex. K; Rooney Decl. ¶ 1.  In November 2016, Orrick met with the government to discuss the investigation.  At this meeting, the government raised the issue of potential conflicts of interest as to Orrick's joint representation, and Orrick informed the government that it had secured waivers in 2015.  Thompson Decl. ¶ 16.  Nonetheless, in May 2017, the government sent a letter to Orrick again raising the issue of potential conflicts of interest.  *See* Rooney Decl., Ex. 1, ECF 23-2.  Orrick provided a copy of the government's letter to each Defendant and discussed the potential conflicts with them before obtaining another set of waivers, which included conflicts based on Fitbit's advancement of fees and costs to represent Defendants.  Thompson Decl. ¶ 23.  Each Defendant (except Rosario) signed a waiver.  *Id.*, Exs.

---

[1] Defendant Weiden retained Orrick when she was added to the action in 2016.  *See* Opp. at 3 nn.1 & 2, ECF 30.
[2]  Weiden executed her engagement letter in June 2016.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  R–V.  Orrick then informed the government of both sets of waivers (from 2015 and 2017) and

2  indicated that it did not believe there were any actual or potential conflicts.  *See id.* ¶ 29; Rooney

3  Decl. ¶ 3.

4      In December 2017, the government informed Defendants via Orrick that they were the

5  targets of a grand jury investigation.  Rooney Decl. ¶ 4.  According to Orrick, throughout this

6  time, when it asked the government to identify potential or actual conflicts, the government

7  refused to discuss specifics, except to note that Mogal and Defendant Rosario worked in the same

8  departments as one another at both Jawbone and Fitbit and Mogal was Rosario's supervisor while

9  at Jawbone.  *See* Thompson Decl. ¶ 29; Rooney Decl. ¶ 6.  At the hearing, the government also

10  noted that Mogal may have been involved in hiring Rosario at Fitbit.  In late December 2017,

11  Orrick informed the government that it still saw no actual conflicts, but had begun searching for

12  separate counsel for Rosario, the "only individual where [Orrick] [could] see why [the

13  government] might perceive a potential conflict."  Thompson Decl., Ex. W.  In January 2018, the

14  government and Orrick met to discuss the perceived conflicts issue.  *Id.* ¶ 6.  The government

15  believed the meeting had not successfully resolved the issue and ceased communication with

16  Orrick from February to June 2018, when the indictment was filed.  Rooney Decl. ¶ 8.

17      The indictment charges each Defendant with possession of trade secrets with the intent to

18  injure Jawbone, in violation of 18 U.S.C. § 1832(a)(3).  Indictment ¶ 12.  The trade secrets at issue

19  here are the same or similar to those involved in the prior actions.  *See* Opp. at 3, ECF 30.

20  Following the indictment, each Defendant except Mogal retained separate counsel to represent

21  him or her in the present action.  Thompson Decl. ¶ 31.  After discussing the issue of conflicts

22  with his or her new counsel, each of Mogal's co-Defendants executed another set of waivers

23  indicating:

24      they did 'not object in any way to Orrick's continued representation of Katherine
       Mogal in connection with the Indictment, and to the extent that any actual or potential
25      conflict may exist or appears to exist, [they] agree[d] to waive any such conflict.'
       *Id.,* Exs. B–F.  Moreover, each agreed 'that in the case that any Individual Defendant
26      becomes a witness, nothing related to Orrick's joint representation in the Prior
       Matters shall create a conflict of interest so as to require the disqualification of Orrick
27      in its representation of Katherine Mogal.'  *Id.*  Finally, they agreed that 'Orrick, while
       honoring and adhering to the attorney-client privilege, will not be disqualified from

28

3

examining or cross-examining any Individual Defendant because of its joint representation in the Prior Matters.' *Id.*

Opp. at 5 (alterations in original); Thompson Decl., Exs. B–E.[3]

Like her co-Defendants, Mogal executed a new waiver after the Indictment.  Thompson Decl., Ex. A.  Before signing this waiver, Mogal spoke to her independent legal counsel, Miranda Kane, at great length about the conflict of interest issues that could arise if Orrick continued to represent her. *Id.* ¶ 32.  Mogal's 2018 waiver set forth the potential conflicts of interest raised in the government's instant motion (as well as several others). *Id.*, Ex. A.  Mogal agreed to waive these conflicts.  Orrick and Mogal also agreed that should any new actual or potential conflicts arise, Mogal and Orrick would discuss whether continued representation was appropriate. *Id.*

The government has never been provided copies of any of the co-Defendant's waivers. *See* Rooney Decl. ¶ 10.  No co-Defendant has joined the government's motion to disqualify.

## II.    LEGAL STANDARD

The Sixth Amendment of the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  This right "was designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 158 (1988).  To achieve this fairness, where the right to counsel exists "there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  The "essential aim" of the right to conflict-free counsel is "to guarantee an effective advocate for each criminal defendant." *Wheat*, 486 U.S. at 159.  But the guarantee also contemplates "the right to select and be represented by one's preferred attorney." *Id.*

All attorneys who practice before this Court are required to "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California."  Civ. L.R. 11-4(a)(1).  In determining whether to disqualify counsel, this Court therefore applies California law. *In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000); *Hitachi, Ltd. v. Tatung Co.*,

---

[3]  Because the waivers were filed under seal and reviewed in camera, the Court quotes only those portions of the waivers quoted by Defendant Mogal in her Opposition in order to preserve the attorney client privilege.  All other Defendants (and their counsel) were present at the hearing and none objected to disclosure of this information by Orrick in Mogal's Opposition.

United States District Court
Northern District of California

419 F. Supp.2 d 1158, 1160 (N.D. Cal. 2006).  The party seeking disqualification bears the burden of establishing by a preponderance of the evidence the existence of a disqualifying prior representation.  *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11-CV-01189–LHK, 2011 WL 4635176, at *3 (N.D. Cal. Oct. 5, 2011) (citing *H.F. Ahmanson & Co. v. Saloman Bros.*, 229 Cal. App. 3d 1445, 1452 (1991)).

Rule 3-310(E) of the California Rules of Professional Conduct provides that "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."  "Where the potential conflict is one that arises from the successive representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client confidentiality."  *Radcliffe v. Hernandez*, 818 F.3d 537, 542 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 620 (2017) (quoting *Flatt v. Sup. Ct.*, 9 Cal. 4th 275 (1994)).  Under California law,

> "A conflict of interest may arise from an attorney's relationship with a non-client in two circumstances: (1) where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity; and (2) where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client."

*Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552, at *4 (N.D. Cal. Dec. 18, 2008), *order clarified*, No. C 07-1200 PJH, 2009 WL 292536 (N.D. Cal. Feb. 5, 2009) (citing California cases).

But even where an actual or potential conflict exists, a defendant may waive his or her right to conflict-free counsel, so long as the waiver is "voluntary, knowing, and intelligent." *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998).  For a waiver to meet this test, the client must have waived the right after being made sufficiently aware of the nature of the actual or potential conflict—that is, the attorney must "communicate[] information reasonably sufficient to permit the client to appreciate the significance of the matter in question."  *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1106 (N.D. Cal. 2003) (quoting ABA Formal Op. 93-372 at

United States District Court
Northern District of California

29).

Ultimately, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Wheat*, 486 U.S. at 162.  And in circumstances where no actual conflict exists but "a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses," the court has "substantial latitude in refusing waivers of conflicts of interest."  *Id.* at 163.

### III.   DISCUSSION

The Court has considered the relevant briefing and the declarations and exhibits submitted in support thereof, including the three sets of waivers executed by Defendants with respect to Orrick's representations, as well as the arguments at the hearing, and hereby determines that each of the Defendants has knowingly, voluntarily, and intelligently waived his or her rights to conflict-free counsel in this case as disclosed in the written waiver.

As an initial matter, the government represented at the hearing on the motion that it brought this motion because of its duty to ensure the fairness of the criminal adversary process. At the same time, the government was forthcoming that this motion was brought mostly because it lacked sufficient information to determine the content and scope of the waivers about which it was aware, and thus to conclude that no actual or potential conflicts of interest that might exist in this case was undisclosed to Defendants.  Unlike the government, this Court has now had the opportunity to review each of the waivers signed by Defendants.

In its motion, the government first notes that Orrick's previous representation of Defendants and its current representation of Defendant Mogal are substantially related because Defendants "were charged in a common indictment with possession of trade secrets stolen from Jawbone before beginning employment at Fitbit."  Mot. at 5–6, ECF 23. As such, the government argues that Orrick likely learned confidential information from Mogal's co-Defendants when it represented them pre-indictment and "in substantially similar civil litigation."  *Id.* (citing *Thomas v. Mun. Court*, 878 F.2d 285, 288 (9th Cir. 1989)).  The government does not raise any perceived actual conflicts of interest based on this prior representation, but it does raise several perceived potential conflicts of interest.

United States District Court
Northern District of California

First, the government claims that Orrick's "prior privileged communication with the co-defendants could potentially be exposed or preclude [it] from effectively cross-examining them at trial." *Id.* at 6.  Second, "Fitbit's third-party payments (past or present) for the defendants' legal representation could divide [Orrick's] loyalties and deny Mogal conflict-free representation" should Fitbit become the subject of its own criminal investigation or suit. *Id.* at 7.  Third, the government claims that Orrick's continued representation may violate the following California Rules of Professional Conduct:  (1) 3-310(B), for any failure by Orrick to disclose in writing to Mogal its past representation of parties in the same or similar matter; (2) 3-310(E), for any failure by Orrick to obtain written consent from Mogal and the co-Defendants to accept employment that may be adverse to them; and (3) 3-310(F), for any failure to obtain informed written consent from Mogal to have Fitbit pay for her representation and for any potential interference with Orrick's independence and professional judgment because of these third-party payments. *See* Mot. at 9. The government notes that Orrick had disclosed that it "made these disclosures and obtained the requisite waivers," but the government cannot concede those waivers are sufficient because it has not been given copies of the waivers. *Id.*  At the hearing, the government informed that Court that so long as the Court is satisfied that the waivers meet all of the requirements mandated by law, the government would not object to Orrick's continued representation of Mogal.

Orrick, for its part, argues that the Defendants' waivers were knowing, voluntary, and intelligent, such that its continued representation is appropriate.  As an initial matter, it notes that not a single co-Defendant has moved to disqualify Orrick, implying that they are perfectly content with Orrick's continued representation of Mogal.  *See* Opp. at 7 (citing *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003)).  It then argues that each of the Defendants knowingly and intelligently waived his or her rights as to any potential conflict in this case.  First, Defendants signed narrow waivers, limited in time and scope, after having significant, repeated, in-depth conversations with Orrick over the last several years about potential conflicts. *Id.* at 9–11.  Each Defendant has now signed three waivers of such conflicts (with the exception of Rosario who did not sign a waiver in 2017), with the most recent waiver signed in 2018 post-indictment. *Id.*; *see generally* Thompson Decl.  Moreover, each Defendant had the opportunity to discuss actual and

7

United States District Court
Northern District of California

1   potential conflicts with independent counsel—Mogal with Miranda Kane, and her co-Defendants

2   with each of their newly retained counsel.  Opp. at 10.  Orrick also notes that each Defendant is

3   sophisticated, with extensive professional and educational experience, supporting the notion that

4   their waivers were intelligent.  *Id.* at 10–11; Thompson Decl. ¶¶ 34, 36.  Finally, Orrick argues

5   that the waivers satisfy the requirements of each of the California Rules of Professional Conduct

6   raised by the government.  Opp. at 11–12.

7          Orrick then argues that these validly executed waivers need not be set aside because there

8   are no actual conflicts in this case and because the chance of any potential conflict becoming an

9   actual conflict is too remote to warrant upending valid waivers.  *See* Opp. at 12–17.  Specifically,

10   Orrick argues that the chances of any co-Defendant becoming a government witness are too

11   remote to warrant disqualification here.  Orrick argues that none of the Defendants even knew

12   each other before the state court and ITC actions, except for Defendants Rosario and Mogal.

13   Moreover, the government's charging decision reflects that the Defendants did not work in tandem

14   with one another, such that one could potentially turn on another—there is no conspiracy charge

15   and no mention of concerted activity.  *Id.* at 13–14.  Moreover, the Defendants' sworn testimony

16   in the ITC action indicate that the co-Defendants will not implicate one another.  In that action, not

17   one of them shifted the blame or made an inculpatory statement against another Defendant.  *See*

18   *id.* at 14.  Likewise, the chances of a conflict arising with Fitbit are too remote because "Orrick is

19   not currently representing Fitbit in this matter, nor is Fitbit a defendant," and because

20   indemnification alone cannot warrant disqualification.  *Id.* at 16–17.

21          The Court finds that each Defendant in this case executed a knowing, voluntary, and

22   intelligent waiver of his or her rights as to Orrick proceeding as counsel for Mogal.  The Court has

23   reviewed each Defendant's waivers from 2015, 2017, and 2018 in detail.  As is most important

24   here, the Court finds the 2018 waiver comprehensive and narrowly tailored to the conflicts that

25   could arise in this case.  Moreover, at the hearing on this motion, the Court spoke to each

26   Defendant's attorney about the waivers and the context in which they were signed.[4]  The attorneys

27

28   [4]  The government requested in its motion that the Court voir dire each Defendant to determine whether the Defendant had voluntarily, knowingly, and intelligently waived his or her rights.  *See*

(including Miranda Kane on behalf of Mogal) informed the Court that they had discussed extensively with their clients all potential conflicts they believed might arise in this case, including those conflicts raised by the government in its briefing.  They also confirmed that they had fully advised the Defendants of their Sixth Amendment rights.  After these extensive discussions, each Defendant signed the 2018 waiver.  At the hearing, none of the Defendants objected to their counsel's representations.

These waivers need not be set aside.  The government has not raised any actual conflicts.  And this Court is satisfied that any potential conflict is not sufficiently imminent to warrant disqualification.  Indeed, the key potential conflict raised by the government—Orrick's ability to effectively cross-examine any co-Defendant—is effectively moot.  As Orrick disclosed at the hearing, Mogal's waiver includes a contingency plan should any of Mogal's co-Defendants serve as a government witness such that cross-examination on behalf of Mogal would be necessary.  In that case, Orrick and Mogal have agreed that an independent attorney could handle the cross-examination, such that any arguable conflict raised by Orrick conducting cross-examination would be mooted.

Having reviewed the waivers and conducted at the hearing a thorough investigation of the issues and context in which the waivers were signed, the Court is satisfied that each Defendant knowingly, voluntarily, and intelligently waived his or her rights with respect to Orrick, and that disqualification is not warranted.

## IV. ORDER

For the foregoing reasons and the reasons stated on the record at the hearing on this motion, the government's motion to disqualify Orrick as counsel for Defendant Mogal is DENIED.

---

Mot. at 9–10.  The Court is only required to personally advise each defendant of their rights under Federal Rule of Criminal Procedure 44 if the defendants are *jointly* represented.  Because the issues raised here are matters of *successive* representation, the Court is satisfied that discussion with each Defendant's attorney was sufficient.

1

**IT IS SO ORDERED.**

2

3    Dated:  September 26, 2018

4    _____

5    BETH LABSON FREEMAN
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California